IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA, )
)
v. ) Criminal No. 06-418
)
DEWAYNE CREWS, )
)

MEMORANDUM OPINION

CONTI, District Judge.

Defendant Dewayne Crews ("defendant" or "Crews") objected to the court's tentative findings with respect to the advisory guideline sentence applicable in this case. Crews contested the court's failure to apply retroactively the Fair Sentencing Act of 2010 ("Fair Sentencing Act"), Pub. L. 111-220, 124 Stat. 2372 (2010). The Fair Sentencing Act changed the drug amount which triggered a mandatory minimum term of ten years' imprisonment for the offense for which Crews was convicted.

Background

On February 22, 2010, a jury convicted Crews of possession with intent to distribute fifty grams or more of cocaine base in a form commonly known as crack, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii). The statute in effect at the time of defendant's offense in 2006 and conviction on February 22, 2010 triggered a mandatory minimum term of imprisonment of ten years for the amount of drugs involved in the offense for which Crews was convicted.

On August 3, 2010, the Fair Sentencing Act was enacted. The Fair Sentencing Act reduced penalties for crack cocaine offenses and directed the United States Sentencing Commission to review and within ninety days amend the advisory sentencing guidelines to

account for the reductions. On November 1, 2010, the relevant amendments to the guidelines became effective. Under the statutory amendments, the mandatory minimum sentence to which Crews was subject would be lowered from ten years to five years and under the amendments to the guidelines the advisory guideline range for his term of imprisonment would be lowered to a term of imprisonment from 360 months to life to between 262 and 327 months. Crews' guideline range was high due to his being classified as a career offender under the guidelines.[1]

During the sentencing hearing Crews argued that the statutory and guideline amendments should be applicable in his case because he was being sentenced after November 1, 2010. This court, however, found that under the court of appeals' holding in United States v. Jacobs, 919 F.2d 10 (3d Cir. 1990), the statute in effect at the time of Crews' offense was applicable. Crews was found to be a career offender, he was subject to a mandatory term of ten years' imprisonment and the applicable advisory guideline sentence for his case included a term of imprisonment from 360 months to life. After granting a departure within the guideline system and considering all the factors set forth in 18 U.S.C. § 3553(a), the court imposed a sentence of 188 months of imprisonment and five years of supervised release. This opinion explains the rationale for the court's finding that the Fair Sentencing Act cannot be given retroactive effect.

Jurisdiction

This court had jurisdiction pursuant to 18 U.S.C. § 3231.

---

[1] Crews also objected to his classification as a career offender. The court, however, determined that Crews was a

Discussion

Crews argues that because as of November 1, 2010 he had not yet been sentenced this court should, in determining his sentence, apply retroactively the Fair Sentencing Act to determine his mandatory minimum sentence and his guideline range for a term of imprisonment. There is no express retroactive provision in the Fair Sentencing Act. See United States v. Reevey, No. 10-1812, 2010 WL 5078239, at *3 (3d Cir. Dec. 14, 2010) ("The [Fair Sentencing Act] does not contain an express statement that the increase in the amount of crack cocaine triggering the five-year mandatory minimum is to be applied to crimes committed before the [Fair Sentencing Act's] effective date.") (nonprededential opinion). Defendant argues that this court should adopt the rationale set forth in United States v. Douglas, Criminal No. 09-202, 2010 WL 4260221 (D. Me, Oct. 27, 2010) (holding that the Fair Sentencing Act applies retroactively to all defendants sentenced after the enactment of the Fair Sentencing Act).[2]

The court in Douglas referred to Warden, Lewisburg Penitentiary v. Marrero, 417 U.S. 653, 660 (1974), which held that the general savings statute, 1 U.S.C. § 109, requires the court "to apply the penalties in place the time the crime was committed, unless the enactment [of a statute] expressly provides for its own retroactive application." Id. at 660. The Supreme Court's

---

career offender.
2 The United States Court of Appeals for the Third Circuit in a nonprecedential opinion recognized that the Fair Sentence Act does not retroactively apply to a person sentenced prior to the effective date of the Fair Sentencing Act. United States v. Reevey, No. 10-1812, 2010 WL 5078239, at *4 (3d Cir. Dec. 14, 2010). The court of appeals distinguished Douglas because the defendant in Reevey was sentenced prior to the enactment of the Fair Sentencing Act and noted that the same judge who authored Douglas found that the Fair Sentencing Act did not apply retroactively in that circumstance. Id. at *4 n.5 (citing United States v. Butterworth, Crim. No. 06-62, 2010 WL 4362859, at *1 (D. Me. Oct. 27, 2010)).

holding in <u>Marrero</u> that an ameliorative statutory change in the eligibility for parole could not be given retroactive effect because a savings clause section of the repealing act and 1 U.S.C. § 190 "saved from repeal the bar of parole eligibility . . . ." <u>Id.</u> at 664. The Court made this holding even though the defendant had a forceful argument that the failure to give retroactive effect to the new statute would "frustrate the current congressional goal of rehabilitating narcotic offenders." <u>Id.</u> The Court instructed that the defendant needed to raise that argument with Congress, not the courts. <u>Id.</u>

The question before the court in <u>Douglas</u> and here is whether the general savings statute, 1 U.S.C. § 109, which was discussed in <u>Marrero</u>, precludes the court from retroactively applying the Fair Sentencing Act. The general savings statute provides:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, <u>unless the repealing Act shall so expressly provide</u>, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109 (emphasis added).

In <u>Marrero</u>, the Supreme Court recognized that Congress enacted the general savings statute to

> abolish the common law presumption that the repeal of a criminal statute resulted in the abatement of prosecutions and to avoid abatements from repeals and re-enactments with different penalties, whether the re-enacted legislation increased or decreased the penalties.

4

Marrero, 417 U.S. at 660. The court in Douglas, however, distinguished Marrero because the repealing statute at issue in that case "had its own savings clause that *specifically preserved* the harsher penalty for prosecution occurring prior to the effective date of the statute. . . . Unlike the statute in *Morrero*, there is *no* savings clause in the Fair Sentencing Act itself." Douglas, 2010 WL 4260221, at *4 (emphasis in the original).

The court in Douglas rejected the government's argument that there must be an express provision in the statute in order to give the amending statute retroactive effect. Id. at * 6. The court viewed Marrero as not requiring that there be an express reference to retroactivity in a statute which amends the level of crack cocaine to trigger a mandatory minimum term of imprisonment; rather, the will of Congress could be "'manifested either expressly *or by necessary implication* in a subsequent enactment.'" Id. at * 5 (quoting Great N. Ry. Co. v. United States, 208 U.S. 452, 465 (1908) (emphasis added in Douglas)).3 The court in Douglas reached that conclusion by considering the Supreme Court's application in Great Northern Railway Co. v. United States, 208 U.S. 452 (1908), of the precursor statute to 1 U.S.C. § 190, which contained language identical to § 190's language.

In Great Northern, the Court considered the effect of two savings clauses contained in a statute (the "Hepburn law"), which repealed another statute (the "Elkins Act"). The defendant in

---

3 In United States v. Gillam, No. 1:10-cr-181-2, 2010 WL 4906283 (W.D. MI. Dec. 3, 2010), the district court applied the Fair Sentencing Act retroactively to a case in which a defendant had not been sentenced as of November 1, 2010 and followed the rationale of Douglas. The court found persuasive a November 17, 2010 letter to the Attorney General from two of the Fair Sentencing Act's sponsors, United States Senators Richard J. Durbin and Patrick J. Leahy, which urged the retroactive application of the Fair Sentencing Act to defendants who had not yet been sentenced. Id., 2010 WL 4906283, at *6.

Great Northern argued that the repealing statute precluded the prosecution of crimes committed while the repealed statute was in effect, but that had not been prosecuted when the repealing act was enacted. The Court commented on the general savings statute in effect at that time. It noted:

> [T]he provisions of [the general savings statute] are to be treated as if incorporated in and as a part of subsequent enactments, and therefore under the general principles of construction requiring, if possible, that effect be given to all the parts of a law, the section must be enforced unless, either by express declaration or necessary implication, arising from the terms of the law as a whole, it results that the legislative mind will be set at naught by giving effect to the provisions of [the general savings statute].

Id. at 465. In Great Northern, the Court dealt with the interpretation of a savings clause in the Hepburn law which provided:

> "That all laws and parts of laws in conflict with the provisions of this act are hereby repealed, but the amendments herein provided for shall not affect causes now pending in courts of the United States, but such causes shall be prosecuted to a conclusion in the manner heretofore provided by law."

Id. at 466 (emphasis added)(quoting Hepburn Act, ch. 3591, § 10, 34 Stat. 584, 595 (1906)("§ 10")). The Court found that § 10's savings provision did not conflict with or destroy the applicability of the general savings statute in effect at that time.

The defendant argued that the language of § 10 implied that only cases pending in court -- not cases for offenses committed prior to the enactment of the repealing statute, but not yet prosecuted -- would be unaffected by the repeal. In other words, an entity like the defendant which committed an offense prior to the enactment of the repealing statute, but had not been prosecuted as of the date of enactment of that law, would be subject to the ameliorative new law.

6

The Court found that argument to be without merit because the savings clause in § 10 contained a reference to prosecuting "'to a conclusion in the manner heretofore provided by law.'" Id. That latter reference was meant "to prevent the application of the new remedies to the causes then pending in the courts of the United States . . . ." Id. at 468. It did not mean that only those causes would be saved from repeal. Section 5 of the Hepburn law also contained "a proviso saving the right to present claims accrued prior to the passage of the act, provided the petition be filed within one year." Id. To give effect to that provision, § 10 of the Hepburn law could not negate the applicability of the general savings statute then in effect. Id. at 469. The Court found that the savings provision in the Hepburn law did not manifest "in any respect the intention of Congress to depart from the general principle expressed in the [general savings statute]." Id.

The court in Douglas concluded that under the rationale of Great Northern it could determine Congress' will by implication and was not limited to the express language of the statute. Under that rationale, the court considered the context of the Fair Sentencing Act, its title, its preamble, the emergency authority accorded to the United States Sentencing Commission to have the guidelines amended, and the Sentencing Reform Act of 1984. The court concluded that Congress did not intend for federal judges "to continue to impose harsher mandatory sentences after enactment merely because the criminal conduct occurred before its enactment." Douglas, 2010 WL 4260221, at *6. The court recognized it may be a stretch to find an express provision in the Fair Sentencing Act with respect to retroactivity, but retroactivity of that statute "is either a 'necessary implication,' or a 'fair implication.'" Id. The court held that if "a defendant was not

7

yet sentenced on November 1, 2010, [he or she] is to be sentenced" under the lower statutory mandatory minimum and the amended guidelines. Id.

The court in Douglas, however, failed to recognize that the Court in Great Northern, like the Court in Marrero, was concerned with interpreting a savings provision in the repealing statute and did not address the situation here where there is no savings provision contained in the Fair Sentencing Act.

The decision by the Court of Appeals for the Third Circuit, in United States v. Jacobs, 919 F.2d 10 (3d Cir. 1990), however, requires that for an amendment to be retroactive a provision for retroactivity must be expressly set forth in the statute. There was no discussion in Jacobs that the amending[4] statute in issue contained a savings provision. In Jacobs, the court of appeals considered whether a defendant was "eligible for probation based on the offense classification in effect at the time she committed the offense or at the time she was sentenced." Id. at 11-12. There was an ameliorative statutory amendment to the offense classification after the defendant committed the offense. In reversing the district court's retroactive application of the amended statute, the court of appeals reasoned that "the saving statute [1 U.S.C. § 190] mandates that probation eligibility be determined according to the statues in effect at the time of the commission of the offense." Id. at 12.

> The plain language of the saving statute indicates that it prevents statutory amendments from affecting penalties retroactively, even if they do so indirectly. See 1 U.S.C. § 109 ("The repeal of any statute shall not have the

---

[4] In Reevey, the court of appeals noted that Jacobs held the general savings statute was applicable to statutory amendments. Reevey, 2010 WL 5078239, at *3.

*effect* to release or extinguish any penalty, forfeiture, or liability. . . . (emphasis added).

Id.

The defendant in Jacobs sought to distinguish Marrero "because the repealed statute in Marrero actually imposed the penalty; while the repealed statute [in Jacobs] merely classified offenses." Jacobs, 919 F.2d. at 12. The defendant argued that Congress never intended that the repealed statute should be saved. The defendant in Jacobs relied on the Congressional intent by identifying Congress' anticipation of the changes and welcoming amendments. The court of appeals found that the distinction argued by the defendant was irrelevant because the changes in the statute in Jacobs constituted changes in punishment governed by the general savings statute. In Jacobs, the Court of Appeals for the Third Circuit made clear that Congressional intent cannot be considered when a repealing or amending statute does not expressly provide for retroactive effect.[5] The court of appeals instructed:

---

[5] The Supreme Court in Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253-54 (1992), opined:
> [C]anons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. See, *e.g., United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241-242, 109 S.Ct. 1026, 1030-1031, 103 L.Ed.2d 290 (1989); *United States v. Goldenberg,* 168 U.S. 95, 102-103, 18 S.Ct. 3, 4, 42 L.Ed. 394 (1897); *Oneale v. Thornton,* 6 Cranch 53, 68, 3 L.Ed. 150 (1810). **When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete."** *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981); see also *Ron Pair Enterprises, supra,* 489 U.S., at 241, 109 S.Ct., at 1030.

Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253-54 (1992)(emphasis added).

> There is nothing in the saving statute that directs the courts to evaluate the significance Congress attached to a statutory amendment in determining whether the saving statute applies. Even a relatively "minor" statutory amendment falls within the plain language of the saving statute if it has the effect of releasing or reducing a criminal penalty. Similarly, we see no indication that we should consider the intended permanence of a repealed statute in determining whether 1 U.S.C. § 109 preserves that statute. In fact, 1 U.S.C. § 109 expressly provides that Congress will indicate exceptions to the effect of the saving statute in the *repealing* statute. *See* 1 U.S.C. § 109 ("The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability, ... *unless the repealing Act shall so expressly provide....*" (emphasis added)). <u>We decline to consider Congress's prior indication that 18 U.S.C. § 3559 would be amended, because doing so would contradict the plain language of 1 U.S.C. § 109</u>.

<u>Jacobs</u>, 919 F.2d at 13 (emphasis added).

Several other courts of appeals have held that in the situation where there is no savings provision in the repealing statute, the general savings statute precludes a court from giving retroactive effect to the repealing statute. See <u>United States v. Bradley</u>, 455 F.2d 1181, 1190 (1st Cir. 1972) ("Whether a repealed provision remains in force as to pre-repeal activities is a matter of Congressional intent to be determined from <u>statutory</u> <u>savings</u> provisions . . . . [U]nless the repealing statute provides otherwise, the repeal of a criminal statute neither abated the underlying offense nor affects its attendant penalties with respect to acts committed prior to repeal."(emphasis added)); <u>United States v. Brown</u>, 429 F.2d 566, 568 (5th Cir. 1970)(where there was no savings provision in a repealing statute, recognized that general savings statute is read "in conjunction with the repealing statute" and allowed prosecution under the repealed statute); <u>United States v. Carter</u>, 171 F.2d 530, 534 (5th Cir. 1948)("We are aware of no reason,

rule, or decision that requires a different conclusion as to criminal prosecution under the authority of Sec. 109 for acts occurring prior to the repeal of the former statute where neither the former statute nor the repealing statute contain no express provision to the contrary.").

It appears that the discussion in <u>Great Northern</u> and <u>Marrero</u> with respect to "implication" may govern those cases in which there is a savings provision in the amending or repealing statute that is not clear or requires interpretation, but not the situation where there is <u>no</u> savings provision contained at all in the amending or repealing statute.

The court in <u>Douglas</u> eloquently by a thorough and detailed analysis determined that a court should assess Congress' will with respect to the retroactive effect of an amending statute under the general savings statute by implication even though the amending statute contains no savings provision. <u>Jacobs</u> instructs that district courts can only assess Congress' will under the general savings statute by the express provisions of a repealing or amending statute. Here, where there is no savings clause in the Fair Sentencing Act, or one that needs to be interpreted, and unless <u>Jacobs'</u> holding is overruled, this court is constrained to apply the Fair Sentencing Act only in a prospective manner. The triggering by that statute of the ameliorative minimum penalties for the offense for which Crews was convicted will not apply to him because his offense was committed prior to the date of enactment of the Fair Sentencing Act. The court under <u>Jacobs</u> must apply the statutory provisions in effect on the date of the offense committed by Crews. This court cannot follow the rationale of <u>Douglas</u>. If Crews is to prevail, the Court of Appeals for the Third Circuit will need to reconsider its decision in <u>Jacobs</u>.

11

By the Court:

Date: December 20, 2010                /s/ JOY FLOWERS CONTI
                                       Joy Flowers Conti
                                       United States District Judge