# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEWAYNE CREWS, | ) |
| Petitioner, | ) |
| | ) CIVIL NO. 13-0647 |
| v. | ) (CRIMINAL NO. 06-418) |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

## OPINION

**CONTI, Chief District Judge**

### I. Introduction

Pending before the court is a motion to vacate, set aside, or correct sentence by a person in federal custody pursuant to 28 U.S.C. § 2255 (the "§ 2255 motion") (ECF No. 288)[1] filed by petitioner Dewayne Crews ("Crews" or "petitioner"). Upon reviewing the submissions of the parties, including petitioner's § 2255 motion (ECF No. 288), the government's response (ECF No. 289), and the petitioner's reply (ECF No. 291), the court will deny petitioner's § 2255 motion for the reasons set forth herein.

### II. Background

On December 5, 2006, petitioner was charged in a one-count indictment with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1). (ECF No. 1.)

---

[1] The docket references ("ECF No.") in this opinion are references to the docket in the criminal case, Criminal No. 06-418.

On February 17, 2010, a jury trial commenced against petitioner with respect to the charges contained in the indictment. The Court of Appeals for the Third Circuit summarized the evidence presented at the trial as follows:

> Local police in Washington County, Pennsylvania arrested William Baugh in July 2006 for narcotics offenses and endangering the welfare of a child. Baugh agreed to cooperate with the police in a narcotics investigation by making controlled drug purchases from local dealers, including Crews, from whom Baugh had previously purchased crack.
>
> On August 30, 2006, Baugh, under police supervision, called Crews to order $50 worth of crack. Police provided Baugh with the necessary cash, the serial numbers of which had been recorded. Baugh drove to Crews's residence and, when he arrived, Crews briefly emerged to tell him that someone would come out to meet with him. Duane Price later came out and handed Baugh some crack in exchange for the $50. Baugh then returned to the police and surrendered the crack that he had purchased.
>
> The next day, Crews arrived at a local police station for a scheduled meeting with his probation officer. Crews confirmed that he was unemployed and that his address was 456 Third Street, the same location where Baugh had purchased crack the previous day. The probation officer administered a drug test and Crews tested positive for cocaine, marijuana, and opiates. Crews admitted that he had "been around cocaine," that he had taken prescription painkillers to alleviate back pain, and that he had recently smoked marijuana. (Supp.App. at 494.) The probation officer then searched Crews and discovered over $400 in cash and two cell phones. Based on the interview, drug test, cash, and phones, the probation officer decided to search Crews's residence. The probation officer brought Crews with him to be present for the search. Upon arriving, they found Jody Hill, Crews's ex-girlfriend, removing her belongings from the home. Hill was present during the search of the home. The probation officer began his search in the master bedroom and discovered a bulletproof vest, a digital scale, and crack. Following those discoveries, the officers obtained written consent from Crews to search the remainder of the home. During the search, they located plastic baggies, a handgun, and an "owe sheet." After the search, officers compared the serial numbers of the controlled purchase funds with the money confiscated from Crews by the probation officer and found that several bills matched.
> …
> At his trial in the United States District Court for the Western District of Pennsylvania, several police officers, along with Baugh and Hill, testified against Crews. Evidence of the controlled purchase, probation interview, drug test, crack, and drug paraphernalia found in his home on August 31 were introduced, as were several letters Crews had sent to Hill admitting that the illicit items seized from the home belonged to him.

United States v. Crews, 494 F. App'x 240, 241 (3d Cir. 2012), cert. denied, 133 S. Ct. 960 (2013) (ECF No. 286) (footnotes omitted).

On February 22, 2010, a jury found petitioner guilty as charged in the indictment. (ECF No. 194.) On December 14, 2010, the court imposed upon petitioner a sentence of a term of imprisonment of 188 months, a term of supervised release of five years, with all terms and conditions listed and outlined, and a special assessment of $100. (ECF No. 273.) On December 16, 2010, petitioner filed a notice of appeal with the United States Court of Appeal for the Third Circuit. (ECF No. 274.) On September 5, 2012, the Court of Appeals for the Third Circuit affirmed the sentence imposed upon petitioner by this court. Crews, 494 F. App'x at 241.

On May 7, 2013, the clerk of court received and filed petitioner's § 2255 motion.[2] (ECF No. 288.) Petitioner in his § 2255 motion argues that his representation by trial counsel, James Donohue ("Donohue"), fell below the standards of effectiveness required under the Sixth Amendment to the United States Constitution because his counsel did not impeach one of the government's witnesses, William "Bert" Baugh ("Baugh"), with a prior inconsistent statement given by Baugh. (ECF No. 291 at 5.)

On June 6, 2013, the court directed the government to file its response to petitioner's § 2255 motion on or before July 19, 2013. On July 17, 2013, the government filed a response in opposition to petitioner's § 2255 motion. (ECF No. 289.) In its response, the government acknowledged the timely filing of petitioner's § 2255 motion. (ECF No. 289, at 2) On August 15,

---

[2] The court is mindful that a *pro se* movant cannot be held to the same stringent standards as attorneys. See United States v. Otero, 502 F.3d 331, 334 (3d Cir. 2007). Thus, a habeas petition should be liberally construed. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998). The court considers petitioner's § 2255 motion with these principles in mind.

3

2013, the clerk of court received and filed petitioner's reply to the response filed by the government. (ECF No. 291.)

On August 26, 2013, petitioner filed a motion to expand the record. (ECF No. 293.) On June 2, 2014, the government filed a response to petitioner's motion to expand the record. (ECF No. 300.) On June 27, 2014, petitioner filed a notice withdrawing his motion to expand the record. (ECF No. 302.)

Petitioner's § 2255 motion having been fully briefed is now ripe to be decided by the court.

### III. Standard for Deciding a Motion to Vacate, Set Aside, or Correct the Sentence Pursuant to 28 U.S.C. § 2255

A district court is required to hold an evidentiary hearing on a motion to vacate sentence filed pursuant to 28 U.S.C. § 2255 unless the motion, files and records of the case show conclusively that the movant is not entitled to relief. 28 U.S.C. § 2255 ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005). The threshold the petitioner must meet to obtain an evidentiary hearing is considered to be "reasonably low." Id. at 546. With this in mind, in considering a motion to vacate a defendant's sentence, the "district court must 'accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" Johnson v. United States, 294 F. App'x 709, 710 (3d Cir. 2008) (quoting Booth, 432 F.3d at 545-46). The district court, however, without further investigation may dispose of "vague and conclusory allegations contained in a § 2255 petition." Johnson, 294 F. App'x at 710 (quoting United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000)).

4

Under 28 U.S.C. § 2255, a federal prisoner in custody may move the court which imposed the sentence to vacate, set aside or correct the sentence

> upon the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."

28 U.S.C. § 2255(a). In Hill v. United States, 368 U.S. 424 (1962), the Supreme Court of the United States read the statute as stating four grounds upon which relief can be granted:

> (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence "is otherwise subject to collateral attack."

Id. at 426-27 (quoting 28 U.S.C. § 2255(a)).

The statute provides as a remedy for a sentence imposed in violation of law that "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). For this remedy to be appropriate for a claim of ineffective assistance of counsel, there must be a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984).

The burden is on the petitioner to establish such a claim and requires a petitioner to prove: (1) deficient representation, meaning that counsel's representation fell below an objective standard of reasonableness, and (2) prejudice, meaning there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 687-88, 694. As both of these components must be demonstrated to support a claim of ineffective assistance of counsel, the absence of one negates the need to address the other. The

United States Court of Appeals for the Third Circuit has directed district courts to address the prejudice prong of the analysis first. See McAleese v. Mazurkiewicz, 1 F.3d 159, 170 (3d Cir. 1993), cert. denied, 510 U.S. 1028 (1993) ("Indeed, this Court has read Strickland as requiring the courts to decide first whether the assumed deficient conduct of counsel prejudiced the defendant.") (internal quotations and citations omitted). The court of appeals in McAleese quoted the Court in Strickland as follows:

> "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."

McAleese, 1 F.3d at 171 (quoting Strickland, 466 U.S. at 697). The court, therefore, will examine the prejudice prong of the Strickland analysis before considering the deficient representation prong in analyzing petitioner's claim for ineffective assistance of counsel.

### IV. Discussion

Petitioner in his § 2255 motion argues that Donohue's performance was deficient because Donohue did not impeach Baugh with a prior inconsistent statement Baugh gave to petitioner's private investigator, Ronald Getner ("Getner"). Baugh testified during petitioner's trial on direct examination by the government that when he arrived at 456 Third Street to perform the controlled buy from petitioner, petitioner "st[u]ck [his] head out of the residence[,]" and said "somebody will be down" to see you. (T.T. 2/17/10 (ECF No. 228) at 123-24.) Baugh testified that an individual named Duane Price "brought [crack] down" from the house, and Baugh in exchange gave him $50. (Id. at 124-25.)

> The following questioning took place when Donohue cross-examined Baugh:
>
> Q. …And when you looked at the face in the window, are you sure that was Dewayne Crews or do you know it might be D[uane] Price?

6

> A. I'm pretty sure it was. Like I said, yes, I would say yes. It was so long ago.
>
> Q. If you're not sure, you're not sure.
>
> …
>
> A. Yeah.
>
> Q. You're sure that D[uane] Price came out of the house?
>
> A. I said I don't know. He brought it down. I didn't see him come out of the house.
>
> Q. Who did you get the crack from?
>
> A. Him.
>
> Q. D[uane] Price?
>
> A. Yes.

(Id. at 128-29.) Donohue did not question Baugh with respect to any prior inconsistent statements by Baugh with respect to whether he saw petitioner or Price in the window at 456 Third Street during the controlled buy.

On February 17, 2010, Donohue called Getner to testify during petitioner's trial. The government requested Donohue provide an offer of proof with respect to Getner's testimony. Donohue responded:

> The offer of proof would be that Mr. Getner interviewed Mr. Baugh about the buy on August 30th of 2006 and that Mr. Baugh described that he was contacted as a result of the arrest and was requested by Brett Massafra to go and do a buy at the 456 Third Street, Donora, and that he did not see Dewayne Crews at the residence on that day and that D[uane] Price delivered the drugs to him.

(T.T. 2/17/10 (ECF No. 228) at 177.) The following exchange then took place between Donohue, counsel for the government, and the court:

> MR. IVORY: How is that not hearsay?
>
> MR. DONOHUE: It's a prior inconsistent statement made by your witness. I'm entitled to put that on.

7

MR. IVORY: Well, I think if you are going to ask somebody about a prior inconsistent statement, what you do is you ask them or you interview the guy did you say this, did you say that, did you say that, did you say this. I don't recall you saying any of that during your cross-examination of Mr. Baugh and I think given that, it's hearsay.

THE COURT: He is correct.

MR. DONOHUE: He is correct about my inquiries of Mr. Baugh.

THE COURT: I think you have to give the person an opportunity to acknowledge or say I didn't say that. If he says I didn't say that, I don't think you can bring in extrinsic --

MR. IVORY: You can't bring extrinsic evidence in.

THE COURT: Why don't we let the jury go for the day and if you feel the government is wrong in how to approach a prior inconsistent statement --

MR. IVORY: I think it is 80 --

THE COURT: I'm looking for it now.

MR. IVORY: 801.

THE COURT: 801 is just definitions.

MR. IVORY: Maybe 803.

THE COURT: That's the exceptions. I think it's 806.

MR. IVORY: Your Honor, I will go get mine.

THE COURT: Okay.

MR. IVORY: It's 801(d)(1)(a).

THE COURT: It would have to have been given under oath or in a deposition.

MR. IVORY: And was subject to the penalty of perjury in a proceeding or a deposition. I wasn't present during the interview so it wasn't a deposition.

MR. DONOHUE: No, it was not a deposition.

THE COURT: So it's a question it's not going to fall within this, but you can still cross-examine somebody on a prior inconsistent statement but I think you have to

> do that by giving the person -- here it is, impeachment. It comes under impeachment.
>
> MR. IVORY: Rule 613.
>
> THE COURT: Okay. It's 613(b). So it can't come in.

(T.T. 2/17/10 (ECF No. 228) at 177-79.)

According to petitioner, Donohue's representation was deficient because he failed to question Baugh about the prior inconsistent statement he gave to Getner, and under the Federal Rules of Evidence, Donohue was prohibited from questioning Getner about Baugh's prior inconsistent statement. Petitioner argues he was prejudiced by Donohue's allegedly deficient representation because if Donohue impeached Baugh with the prior inconsistent statement, the government would not have been able to prove petitioner *knowingly* possessed with intent to distribute the cocaine base found inside 456 Third Street and charged against petitioner in the indictment. Whether petitioner met his burden to show he is entitled to a hearing based upon a claim of ineffective assistance of counsel will be addressed below. The court will first address whether petitioner was prejudiced by Donohue's allegedly deficient performance. McAleese, 1 F.3d at 171 (quoting Strickland, 466 U.S. at 697).

### A. Prejudice

The court must analyze whether Donohue's allegedly deficient performance prejudiced petitioner, i.e., "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Petitioner argues that the outcome of his case would have been different but for Donohue's failure to cross-examine Baugh with respect to Baugh's prior inconsistent statement to Getner. (ECF No. 288 at 9.) Petitioner argues that the inconsistency of Baugh's testimony would have raised a "reasonable probability" and "would have presented a probability sufficient to undermine

9

confidence in the outcome." (Id.) The government argues even if Donohue impeached Baugh with respect to his prior inconsistent statement, and the jury discredited him as a witness, there was sufficient evidence presented for the jury to find beyond a reasonable doubt that petitioner knowingly possessed the cocaine base with the intent to distribute it as charged in the indictment. (ECF No. 289 at 12.)

Although Donohue did not cross-examine Baugh about the prior inconsistent statement he gave to Getner with respect to seeing Price—and not petitioner—during the controlled buy in the window of 456 Third Street, the jury heard other evidence that directly contradicted Baugh's testimony with respect to that issue. The controlled buy between petitioner and Baugh was overseen by Pennsylvania State Trooper Brett Massafra ("Massafra). Massafra testified at trial that he watched Baugh approach 456 Third Street to conduct the controlled buy, he saw *Price*—not petitioner—through the window of the residence, and never saw Baugh interact with petitioner. Massafra testified to those facts on direct examination by the government and cross-examination by Donohue. (T.T. 2/16/10 (ECF No. 227) at 101.) The jury convicted petitioner despite having heard evidence that <u>directly</u> contradicted Baugh's testimony that he saw *petitioner* in the window at 456 Third Street. There is not, therefore, a reasonable probability that but for Donohue's failure to impeach Baugh with his prior inconsistent statement the outcome of petitioner's trial would have been different.

Even if Donohue impeached Baugh and the jury determined he was not a credible witness, disregarded his testimony, and believed it was Price who stuck his head out of the window at 456 Third Street, the *other* evidence presented at trial was sufficient to convict

petitioner of the crime charged in the indictment.[3] Petitioner argues that at the time of the controlled buy, he did not live at 456 Third Street, and, therefore, without Baugh's testimony placing him at the residence, there was insufficient evidence for the jury to find that he *knowingly* possessed the cocaine base found in 456 Third Street.

There was, however, more than sufficient evidence presented to the jury by the government to show that petitioner lived at 456 Third Street at the time law enforcement searched the residence and found the cocaine base with which petitioner was charged in the indictment. The following evidence was presented at trial:

- On August 7, 2006, Massafra encountered petitioner, and petitioner told Massafra his address was 456 Third Street; (T.T. 2/16/10 (ECF No. 227) at 134);

- Petitioner's probation officer, Anthony Mori ("Mori"), who was actively supervising petitioner in August 2006, testified that in August 2006, petitioner lived at 456 Third Street (T.T. 2/17/10 (ECF No. 228) at 7);

- On August 31, 2006—the day after the controlled buy—petitioner told Mori that he was unemployed (T.T. 2/17/10 (ECF No. 228) at 10-11);

- Petitioner reported to the probation office that as of July 13, 2006, he resided at 456 Third Street (T.T. 2/17/10 (ECF No. 228) at 36);

- Petitioner had an obligation to report to Mori if he changed his address; on August 31, 2006, petitioner did not report to Mori a change of address from 456 Third Street (T.T. 2/17/10 (ECF No. 228) at 35-38);

- Petitioner signed a written consent form authorizing Massafra and other members of law enforcement to conduct a search of 456 Third Street (T.T. 2/16/10 (ECF No. 227) at 84-85);

- Massafra found pieces of mail addressed to petitioner at the 456 Third Street address in the search of 456 Third Street, including an electricity bill and another piece of mail addressed to petitioner (Id. at 91);

---

[3] Petitioner argued to the Court of Appeals for the Third Circuit that the evidence was insufficient to convict him at trial. The court of appeals in response to that argument commented: "In light of the controlled-purchase evidence, the probation meeting interview, the failed drug test, and the evidence obtained in the search of Crews's home, that argument is plainly without merit." Crews, 494 F. A'ppx at 247 n.24.

11

- Law enforcement also found in 456 Third Street a letter addressed to petitioner's girlfriend, Jody Hill ("Hill"), and an identification card for Hill (Id. at 92);

- Hill testified that she lived with petitioner at 456 Third Street, which was owned by petitioner's grandfather (T.T. 2/17/10 (ECF No. 228) at 47-48);

- Hill testified that the bulletproof vest found in the closet in 456 Third Street belonged to petitioner (T.T. 2/17/10 (ECF No. 228) at 53); and

- Petitioner in a letter to Hill dated November 6, 2006, referred to 456 Third Street as his house (T.T. 2/17/10 (ECF No. 228) at 65-66).[4]

The following evidence was presented at trial to show the cocaine base recovered in the master bedroom of 456 Third Street belonged to and was possessed by petitioner with the intent to distribute it:

- On August 31, 2006—the day after the controlled buy—petitioner failed a drug test administered by Mori by testing positive for cocaine, opiates, and THC or marijuana (T.T. 2/17/10 (ECF No. 228) at 12);

- On the same day, petitioner told Mori that he used marijuana, was taking prescription medication "for some health ailment," and recently was around and handled cocaine, but did not ingest it (T.T. 2/17/10 (ECF No. 228) at 12-13);

- Following petitioner failing the drug test, Mori searched petitioner's person and recovered two of the bills that Baugh used to purchase the cocaine from Price from petitioner's person and two cellular phones, including one of a type that is commonly used by drug dealers (T.T. 2/17/10 (ECF No. 228) at 13, 145-46);

- Mori during the initial search of 456 Third Street found a bulletproof vest in the closet in the master bedroom (T.T. 2/16/10 (ECF No. 227) at 82);

- A bag of cocaine base and a digital scale were found inside a girl's "white frilly boot" in the closet of the master bedroom of 456 Third Street (T.T. 2/16/10 (ECF No. 227) at 82-83);

- In the follow-up search of 456 Third Street, Mori and Massafra recovered a "baggie with a quarter ripped out," a torn baggie, a baggie cut in half, five baggies with the

---

[4] Petitioner wrote to Hill, who was living at 456 Third Street: "Please for the last time keep Niggers out my [expletive deleted] house. I'm not there…." (Gov't. Ex. 34(a); ECF No. 195 at 2.)

corners ripped off, and a box of baggies, which were all indicative of packaging cocaine base (T.T. 2/16/10 (ECF No. 227) at 88-90);

- The follow-up search also recovered a baggie corner found in a child's bedroom on top of an entertainment center with "a lot of white residue on it" (T.T. 2/16/10 (ECF No. 227) at 89);

- Massafra in his search of 456 Third Street found an owe sheet, which is a document used by drug dealers to record which drug users owe them payment, (T.T. 2/16/10 (ECF No. 227) at 92-95); the owe sheet was recorded on the back of a document belonging to one of Hill's children; (T.T. 2/17/10 (ECF No. 228) at 102);

- Law enforcement officers did not find any instruments used to consume or ingest drugs or indicia of residency at 456 Third Street for Price in the search of 456 Third Street (T.T. 2/16/10 (ECF No. 227) at 95-96);

- Petitioner in letters written to Hill accepted responsibility for the drugs found at 456 Third Street[5] (T.T. 2/17/2010 (ECF No. 228) at 56, 58, 60);

- The items recovered from 456 Third Street, i.e., torn baggies, a bulletproof vest, two cellular telephones, a digital scale, and cocaine base, are items that—taken together—are possessed by an individual involved in the illegal distribution of narcotics (T.T. 2/17/2010 (ECF No. 228) at 147-48).

Where the evidence is overwhelming in support of the jury's verdict, notwithstanding alleged deficiencies of counsel, it is difficult to conclude that there is a showing of prejudice. Strickland, 466 U.S. at 699. Based upon the foregoing, even without considering Baugh's

---

[5] Three letters from petitioner to Hill were listed as Government Exhibits 29(a), 30(a), 31(a).

In Government Ex. 29(a), petitioner wrote: "They can't charge you, I took responsibility 4 [sic] everything. Don't chu [sic] ever think, I would leave you out in tha [sic] storm."

In Government Ex. 30(a), petitioner wrote: "All I no [sic] is that it is Federal. Jody I never had no ittention [sic] on putting this on you. I don't no [sic] why they charged you."

In Government Ex. 31(a), petitioner wrote: "I told them that I didn't want you involved in this and they no [sic] that because I stepped up and put it on my shoulders."

All three letters were admitted as evidence during trial on February 17, 2010. (ECF No. 195 at 2; T.T. 2/17/10 (ECF No. 227).)

testimony, there was sufficient evidence presented to the jury for it to find that petitioner lived at 456 Third Street and possessed with the intent to distribute the cocaine base charged in the indictment. Petitioner, therefore, failed to show that but for Donohue's failure to cross-examine Baugh with respect to his prior inconsistent statement about who he saw in the window of 456 Third Street during the controlled buy, there is a reasonable probability that the result of the proceeding would have been different.

### B. Deficient Performance

The court, having determined petitioner was not prejudiced by Donohue's failure to impeach Baugh with Baugh's prior inconsistent statement, will not address whether Donohue's representation of petitioner fell below an objective standard of reasonableness. McAleese, 1 F.3d at 171.

### V. Conclusion

For the reasons set forth above, petitioner's § 2255 motion (ECF No. 288) will be denied. The motions, files, and records of this case conclusively show that petitioner failed to demonstrate that he was prejudiced by Donohue's allegedly deficient representation. Under those circumstances, there is no reason to conduct an evidentiary hearing to consider petitioner's claims.

### VI. Certificate of Appealability

When a district court issues a final order denying a § 2255 motion, the court must also make a determination about whether a certificate of appealability ("COA") should issue or the clerk of the court of appeals shall remand the case to the district court for a prompt determination about whether a certificate should issue. See 3d Cir. LAR. 22.2.

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when

the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Slack v McDaniel, 529 U.S. 473, 484-85 (2000).

Based upon the motion, files and records of the instant case, and for the reasons set forth above, the court finds that petitioner did not show a denial of a constitutional right. Therefore, a COA should not issue.

An appropriate order will be entered.

|  |  |
|---|---|
| Dated: May 13, 2015 | By the court:<br>/s/ JOY FLOWERS CONTI<br>Joy Flowers Conti<br>Chief United States District Judge |

cc:   Dewayne Crews, #09284-068
      FCI Raybrook
      P.O. Box 900
      Raybrook, New York 12977